# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRANDIE K. A.,<br><br>        Plaintiff,<br><br>    v.<br><br>ANDREW SAUL,<br>Commissioner of Social Security,<br>        Defendant. | Case No. EDCV 19-01017-RAO<br><br>**MEMORANDUM OPINION AND ORDER** |

## I.   INTRODUCTION

Plaintiff Brandie K. A.[1] ("Plaintiff") challenges the Commissioner's denial of her application for a period of disability and disability insurance benefits ("DIB").[2] For the reasons stated below, the decision of the Commissioner is REVERSED and the action is REMANDED for further proceedings consistent with this Order.

///

---

[1] Plaintiff's name is partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul, the current Commissioner of Social Security, is hereby substituted as the defendant herein.

## II.    PROCEEDINGS BELOW

On January 9, 2015, Plaintiff applied for DIB alleging disability beginning June 11, 2013. (Administrative Record ("AR") 222-23). Her application was denied initially on April 15, 2015, and upon reconsideration on October 23, 2015. (AR 76-107.) On December 22, 2015, Plaintiff filed a written request for hearing, and a hearing was held on April 27, 2018. (AR 120-21.) Plaintiff, represented by counsel, appeared and testified, along with an impartial vocational expert. (AR 41-75.) On June 19, 2018, the Administrative Law Judge ("ALJ") found that Plaintiff had not been under a disability, pursuant to the Social Security Act,[3] from June 11, 2013 through the decision date. (AR 36.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. (AR 2-8.) Plaintiff filed this action on June 3, 2019. (Dkt. No. 1.)

The ALJ followed a five-step sequential evaluation process to assess whether Plaintiff was disabled under the Social Security Act. *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995). At **step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 11, 2013, the alleged onset date. (AR 23.) At **step two**, the ALJ found that Plaintiff has the severe impairments of fibromyalgia; chronic pain syndrome; degenerative joint disease of the knees, status-post multiple surgeries; intracranial hypertension; benign positional vertigo; migraine headaches; obesity; Ehlers-Danlos Syndrome; depression; and anxiety. (*Id*.) At **step three**, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (AR 24.)

Before proceeding to step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to:

---

[3] Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment expected to result in death, or which has lasted or is expected to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A).

> [P]erform sedentary work . . . except [Plaintiff] can occasionally perform postural activities; she cannot work at unprotected heights, around moving machinery, or other hazards; she should avoid concentrated exposure to extreme cold, vibration, and walking on uneven terrain; she can concentrate for up to 2 hour periods of time, but is limited to unskilled tasks in a non-public work setting; and she would need an assistive device for all ambulation.

(AR 25.)

At **step four**, based on Plaintiff's RFC and the VE's opinion, the ALJ found that Plaintiff is unable to perform any past relevant work. (AR 34.) At **step five**, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (AR 35.) Accordingly, the ALJ found that Plaintiff "has not been under a disability . . . from June 11, 2013, through the date of [the ALJ's] decision." (AR 36.)

### III. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. A court must affirm an ALJ's findings of fact if they are supported by substantial evidence, and if the proper legal standards were applied. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue,* 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Robbins v. Soc. Sec. Admin.,* 466 F.3d 880, 882 (9th Cir. 2006)). An ALJ can satisfy the substantial evidence requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted).

"[T]he Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence. Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the

Secretary's conclusion." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001) (citations and internal quotations omitted). "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.,* 528 F.3d 1194, 1198 (9th Cir. 2008) (citing *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)); *see also Robbins,* 466 F.3d at 882 ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ."). The Court may review only "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citing *Connett v. Barnhart,* 340 F.3d 871, 874 (9th Cir. 2003)).

## IV. DISCUSSION

Plaintiff contends that the ALJ erred in assessing the RFC for the mental requirements of work. (Joint Submission ("JS") at 5-9, 16-18.) The Commissioner disagrees. (JS at 9-16.)

### A. The ALJ Erred In Assessing the Mental RFC

Plaintiff argues that the ALJ "conflated simple tasks with unskilled work" in determining the RFC. (JS at 9.) The Commissioner argues that the ALJ properly found that Plaintiff has the RFC to perform unskilled tasks. (JS at 9.) For the reasons set forth below, the Court finds that the mental RFC determination is not supported by substantial evidence.

#### 1. Applicable Legal Standards

The ALJ is responsible for assessing a claimant's RFC "based on all of the relevant medical and other evidence." 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c); *see Robbins*, 466 F.3d at 883 (citing Soc. Sec. Ruling 96-8p (July 2, 1996), 1996 WL 374184, at *5). In doing so, the ALJ may consider any statements provided by medical sources, including statements that are not based on formal medical examinations. *See* 20 C.F.R. §§ 404.1513(a), 404.1545(a)(3). An ALJ's determination of a claimant's RFC must be affirmed "if the ALJ applied the proper

4

legal standard and his decision is supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

### 2. The ALJ's Decision

In determining the mental RFC, the ALJ gave "great weight" to the opinions of the non-examining State agency medical consultants. (AR 33.) On initial review, CW Kang, M.D., found Plaintiff moderately limited in the areas of maintaining attention and concentration for extended periods, maintaining a schedule with regular attendance, completing a normal workday and workweek without interruptions, interacting appropriately with the general public, and responding appropriately to changes in the work setting. (AR 86-87.) In explaining why Plaintiff could not perform past jobs, Dr. Kang stated that Plaintiff "is limited to an unskilled MRFC." (AR 88.) Dr. Kang concluded that Plaintiff had the severe impairment of depressive disorder and panic disorder with agoraphobia and could perform "simpler tasking" with limited general public contact. (AR 86-87.)

On reconsideration, Preston Davis, Psy.D., agreed with Dr. Kang's opinion and adopted the determination for "simple w[or]k tasks w/ limited general public contact." (AR 99.)

The ALJ noted that the State agency medical consultants "concluded [Plaintiff] was capable of simple tasks with limited general public contact," and gave "great weight" to those conclusions. (AR 33.) The ALJ found that the State agency opinions were "reasonable and consistent with the objective medical evidence," and adequately considered Plaintiff's subjective statements of difficulties being around others. (AR 33.) In the same paragraph, the ALJ limited Plaintiff to "unskilled tasks in a non-public setting" to avoid stress, "tak[ing] into account the benign objective findings but also generously consider[ing] [Plaintiff's] subjective complaints." (*Id.*)

### 3. Discussion

Plaintiff asserts that the ALJ's characterization of the State agency opinions as describing her as "capable of simple tasks with limited general public contact" is

supported by substantial evidence, but the ALJ's RFC determination that she could perform unskilled work is not. (JS at 7.) According to Plaintiff, sedentary unskilled work covers a broader range than sedentary simple work; thus, her ability to perform simple tasks does not mean she can perform the unskilled jobs of document preparer and surveillance-system monitor. (JS at 7-8.)

The Court cannot determine whether the ALJ intended to adopt the State agency opinions regarding simple tasks or whether the ALJ intended to broaden the range of tasks Plaintiff could do by finding her capable of unskilled tasks. Although unskilled work includes simple tasks, it covers a broader range of work. *See Zavalin v. Colvin*, 778 F.3d 842, 847 (9th Cir. 2015) (holding an apparent conflict exists between an RFC for simple, repetitive tasks and the demands of level three reasoning, such as in the surveillance-system monitor job); *see also Dyer ex rel. Dyer v. Colvin*, 9 F. Supp. 3d 1116, 1125 (D. Ariz. 2014) (finding ALJ's decision not supported by substantial evidence where ALJ relied on vocational expert's testimony that "[a]ll unskilled work requires simple directions and simple tasks," regardless of the reasoning level required). The Commissioner argues that the ALJ merely interpreted the State agency opinions as concluding that Plaintiff could perform unskilled work, and therefore, was not required to provide reasons for rejecting their opinions. (JS at 9-10.) The flaw in the Commissioner's argument is that the ALJ specifically interpreted the State agency opinions as concluding that Plaintiff was capable of simple tasks, and the ALJ gave their opinions great weight. (AR 33.) The Commissioner further argues that the ALJ has the sole authority to determine the RFC. (JS at 10.) The Court finds, however, if the ALJ intended to expand the range of tasks Plaintiff could perform, the ALJ failed to explain why. Thus, the RFC for unskilled tasks is not supported by substantial evidence.[4]

---

[4] The Commissioner argues that other record evidence supports the RFC, such as Plaintiff's employment history. (JS at 11.) But that was not a reason that the ALJ provided, and the Court may not consider grounds upon which the ALJ did not rely. *See Orn*, 495 F.3d at 630; *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225

Even if the ALJ intended to limit Plaintiff to simple tasks, the error is not harmless. At step five, the ALJ found that Plaintiff could perform the jobs of document preparer, surveillance-system monitor, and addresser. As Plaintiff argues, the document preparer and surveillance-system monitor jobs require level three reasoning, which presents an apparent conflict with the RFC. *See Zavalin*, 778 F.3d at 847. The ALJ did not ask the VE to clarify or explain the inconsistency, and thus, the ALJ erred in failing to reconcile the apparent conflict. The Commissioner argues that a harmless error analysis must be performed to consider other evidence in the record, such as Plaintiff's education and job experience. (JS at 13 (citing *Zavalin*, 778 F.3d at 844, 847).) As in *Zavalin*, the Court concludes the error is not harmless because even considering Plaintiff's background, there are tasks required in the document preparer and surveillance-system monitor jobs that could contain "situational variables that may not be simple."[5] *See Zavalin*, 778 F.3d at 848 (finding that "a surveillance system monitor may be called upon to use discretion and judgment in rapidly evolving scenarios, including deciding when a situation requires the authorities to be notified, all while continuing to maintain surveillance"); DICOT Nos. 249.587-018, 279.367-010. The Court finds no clear showing in the record that Plaintiff could perform work at reasoning level three despite his RFC limitations that are, themselves, unclear.

///

---

(9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ – not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking.").

[5] The Commissioner argues that in *Tester v. Colvin*, 624 F. App'x 485 (9th Cir. 2015), courts were advised to look at the record as a whole with respect to reconciling the RFC with reasoning level. (JS at 13.) Additionally, the Commissioner relies on *Musser v. Colvin*, 2015 WL 4460677, at *9 (E.D. Cal. Jul. 21, 2015), and *Watkins v. Comm'r Soc. Sec.*, 2016 WL 4445467, at *8 (D. Or. Aug. 22, 2016). The Court has examined the record as a whole here and concludes that the ALJ's failure to resolve the apparent conflict was not harmless error.

7

Even though the remaining job of addresser does not require level three reasoning, the Court cannot find harmless error here. According to Plaintiff, the addresser job, which addresses envelopes, cards, and advertising literature by hand or by typewriter, is obsolete and fails to rise to the level of a significant number of jobs. (JS at 8-9) (citing Trapani and Harkin, *Occupational and Medical-Vocational Claims Review Study* p. 7 (SSA May 2011), https://www.ssa.gov/oidap/Documents/PRESENTATION--TRAPANI%20AND%20HARKIN--OIDAP%2005-04-11.pdf). The Commissioner argues that the DOT remains a recognized source of vocational information and at an "aggregate number" of 44,000 jobs available nationally, the number is sufficient.[6] (JS at 15-16 n.5.)

Plaintiff relies on *Skinner v. Berryhill*, 2018 WL 1631275, at *6-7 (C.D. Cal. May 14, 2018), which the Court finds persuasive. In *Skinner*, the court remanded for the VE to determine whether the addresser position, as performed in the "modern economy," was still an occupation available to plaintiff:

> [I]t is not unreasonable to assume that the occupation of "addresser," which – as described by the DOT – provides for addressing envelopes *by hand or by typewriter*, is an occupation that has significantly dwindled in number since 1991 [when the DOT was updated] in light of technological advances. That being the case, a reasonable mind would not accept the VE's testimony that there are over 3,000 such positions in the region of California alone, or even that there are over 10,000 in the national economy.

---

[6] The Commissioner's representation of an aggregate number of jobs in the national economy as 44,000 is misleading. The VE testified that there are 8,622 addresser jobs available in the national economy. (AR 35, 71.) It appears that the Commissioner combined the number of document preparer (28,743), addresser (8,622), and surveillance system monitor (5,032) jobs to arrive at the aggregate number.

*Skinner*, 2018 WL 1631275, at *6 (relying on *Farias v. Colvin*, 519 F. App'x 439 (9th Cir. 2013)). In addition to the *Skinner* court, other district courts in the Ninth Circuit have found the "obsolete" argument persuasive and found that the ALJ erred in relying on the VE's job numbers for the addresser position. *See, e.g., Beaupre v. Berryhill*, 2020 WL 343698, at *7 (D. Nev. Jan. 21, 2020) (remanding to determine the availability of the addresser position "in today's marketplace"); *Bazan v. Berryhill*, 2019 WL 4751874, at *8 (N.D. Cal. Sept. 30, 2019) (concluding that the ALJ erred in finding that the addresser job existed in significant numbers in the national economy because "per the SSA's own findings, the addresser job is obsolete"); *Analia D. v. Berryhill*, 2019 WL 856854, at *2-3 (C.D. Cal. Feb. 6, 2019) (remanding on the ground that "[s]ubstantial evidence and common sense do not – and reasonably could not – support the agency's conclusion that thousands of people work [as an addresser] every day typing envelopes for a living"). It appears that the Ninth Circuit has not directly addressed the issue of whether the position of addresser is obsolete.[7]

---

[7] The Court is aware of the Ninth Circuit's recent decision, *Ford v. Saul*, 950 F.3d 1141 (9th Cir. 2020), and finds it distinguishable. In *Ford*, plaintiff argued, in pertinent part, that the VE's failure to produce the underlying source material for his testimony on the number of jobs that exist in the national economy for the addresser position undermined the reliability of the VE's testimony, and thus, the VE's testimony did not constitute substantial evidence regarding the number of jobs available. *Ford*, 950 F.3d at 1159. The court rejected plaintiff's argument, deferring to the "ALJ's fact-finding for substantial evidence," and concluding that the VE's testimony on job numbers was "'the kind of evidence . . . that a reasonable mind might accept as adequate to support a finding about job availability.'" *Id*. (quoting *Biestek v. Berryhill*, —U.S. —, 139 S. Ct. 1148, 1155, 203 L. Ed. 2d 504 (2019)). The court relied in part on the fact that plaintiff "d[id] not identify any evidence undermining the vocational expert's testimony." *Id*. at 1160. In contrast, here, as in *Skinner*, Plaintiff challenged the VE's testimony by identifying the Agency's May 2011 *Occupational and Medical-Vocational Claims Review Study* as undermining the VE's testimony. (JS at 8; *Skinner*, 2018 WL 1631275, at *5). In addition, in *Ford*, plaintiff was not challenging the number of addresser positions on obsoleteness grounds.

Further, as Plaintiff argues, the Agency's own *Occupational and Medical-Vocational Claims Review Study* undermines the VE's testimony. In the *Study*, the Agency states that the addresser occupation "might be obsolete" and "[i]t is doubtful that th[is] job[], as described in the DOT, currently exist[s] in significant numbers in our economy." *Occupational and Medical-Vocational Claims Review Study* at 7. Notably, the *Study* is not a vocational publication from another agency or entity; rather, it is published by the Agency itself. *See Beamesderfer v. Berryhill*, 2018 WL 2315956, at *7 (C.D. Cal. May 19, 2018) ("[T]he guidelines do not require the ALJ to resolve conflicts between VE testimony and *other vocational publications* [such as OOH, CBP or O*NET] or information.") (emphasis in original). Additionally, putting aside the issue whether the addresser job is obsolete, the number of addresser jobs in the national economy that the VE identified, 8,622, does not constitute a significant number of jobs. *See Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 529 (9th Cir. 2014) (noting that 25,000 jobs nationwide "presents a close call"); *see also Eckard v. Astrue*, 2012 WL 669895, at *5 (E.D. Cal. Feb. 29, 2012) (finding 8,000 jobs nationwide not a significant number of jobs).

Accordingly, the Court finds that substantial evidence does not support the ALJ's determination that the addresser position continues to exist in significant numbers.

///

///

---

The Court is also aware of the Ninth Circuit's unpublished decision, *Gallo v. Comm'r of Soc. Sec. Admin.*, 449 F. App's 648, 650 (9th Cir. 2011) (finding ALJ "entitled to rely on the VE's testimony that the Addresser job exists in significant numbers in the national economy). *Gallo* is distinguishable because plaintiff there did not provide any evidence in support of the argument that the addresser job did not exist in significant numbers. *See Skinner*, 2018 WL 1631275, at *7 (distinguishing *Gallo* on the ground that plaintiff did not provide the court with evidence supporting her position and noting that *Gallo* was not binding or even persuasive, "given its inherent ambiguities"). Here, Plaintiff provided evidence in support of her position.

In sum, even if the ALJ intended to limit Plaintiff to simple tasks, the error is not harmless. Remand is warranted so that the ALJ can properly evaluate Plaintiff's mental RFC.

### B. Remand For Further Administrative Proceedings

Because further administrative review could remedy the ALJ's errors, remand for further administrative proceedings, rather than an award of benefits, is warranted here. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (remanding for an award of benefits is appropriate in rare circumstances). Before ordering remand for an award of benefits, three requirements must be met: (1) the Court must conclude that the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) the Court must conclude that the record has been fully developed and further administrative proceedings would serve no useful purpose; and (3) the Court must conclude that if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Id.* (citations omitted). Even if all three requirements are met, the Court retains flexibility to remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* (citation omitted).

Here, remand for further administrative proceedings is appropriate. The Court finds that the ALJ erred in assessing Plaintiff's mental RFC. On remand, the ALJ shall reassess Plaintiff's mental RFC and proceed through steps four and five to determine what work, if any, Plaintiff is capable of performing.

///
///
///

## V. CONCLUSION

IT IS ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter for further proceedings consistent with this Order.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: May 21, 2020

/s/
ROZELLA A. OLIVER
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS, OR ANY OTHER LEGAL DATABASE.**